# ROCKINGHAM,

## JANUARY TERM, A. D. 1859.

### FROST v. FLANDERS.

37 549
68 305

Where an execution has been extended on land, and the debtor, in a writ of entry, relies on a tender to discharge the land from the extent, he must bring the amount tendered into court.

WRIT OF ENTRY. The plaintiff claimed as heir of her father, Newell Frost, proved that he was once owner of the land, and died intestate, leaving the plaintiff, one of five children.

The defendant offered in evidence the extent of an execution issued on a judgment recovered by him against Newell Frost. No objection was made to the form of the levy, but the plaintiff contended that the extent was avoided by a tender which Newell Frost made to the defendant, and offered evidence tending to show that within one year from the return day of the execution, Newell Frost tendered to the defendant the sum at which the land was appraised, with interest from the time when the levy was received for record by the register of deeds, and that the money tendered was left with an agent near the defendant, for him, and never taken by Newell Frost, or any person for him or his heirs, and that the agent still held it.

The plaintiff did not bring that money, or any money, into court, or make profert of it in any form at the trial. The court ruled that the tender avoided the levy, and that it was not necessary for the plaintiff to bring the amount into court, or make any profert at the trial.

The defendant excepted to this ruling of the court, and the jury having returned a verdict for the plaintiff, moves that the verdict be set aside.

*Christie*, for the defendant.

The levy was a lien in the nature of a mortgage; and in the case of a mortgage the mortgagor who relies on a tender must bring the money into court. *Bailey* v. *Metcalf*, 6 N. H. 156, overruling *Swett* v. *Horn*, 1 N. H. 332. The language used in the statute in the case of a mortgage and of a levy is the same. Leaving the money tendered with an agent of the debtor can have no effect. *Town* v. *Trow*, 24 Pick. 169.

If a debt or duty be not discharged by tender and refusal, the tender must be pleaded with a profert *in curia*. *Carley* v. *Vance*, 17 Mass. 389, 392; *Chafflin* v. *Hawes*, 8 Mass. 261; *Tucker* v. *Buffum*, 16 Pick. 461; 2 Greenl. Ev., sec. 600; Rev. Stat. of Mass., chap. 73, secs. 24, 25, 26.

*Marston*, for the plaintiff.

The statute provides that the levy shall be avoided by the tender, and the debtor in this case did all that the terms of the statute require. At common law a tender of money secured by mortgage discharged the land, without any obligation to keep the tender good. 6 Bacon's Ab., Tender, F; *Bailey* v. *Metcalf*, 6 N. H. 156. The decision in *Bailey* v. *Metcalf* is put on the provision of the statute showing the manner in which the debtor may obtain a discharge, by proving a tender and bringing the money into court.

A mortgage is voluntary, and the equity of redemption is an indulgence beyond the contract; but a levy is *in invitum*, and the debtor may relieve himself by doing what is prescribed by the terms of the statute. The statute prescribes no method by which the debtor can compel the creditor to release a levy, after tender of the debt. Per-

haps a court of equity might decree a release; but the statute never intended that the debtor should be driven into equity for that purpose.

The heir has no control of the money tendered by the executor. If it does not belong to the debtor, it belongs to the executor.

PERLEY, C. J. The word *tender*, used in the statute, is a legal term, and ordinarily implies that the sum tendered is kept ready for the creditor, and that if the tender is relied on in a suit brought for the money, it must be pleaded with a *profert in curia.* Was it the intention of the statute that the money tendered by an execution debtor, to discharge his land from an extent, should be kept by him for the creditor, and brought into court, when relied on in a suit brought to recover the land? Or is the extent absolutely avoided by the mere offer of the money, without any obligation on the part of the debtor to keep it for the creditor and produce it in court?

There are some cases in which the mere offer of money discharges the party who makes the offer from all obligation to pay the money; as, where the money tendered is not a sum due by the party tendering it, but the payment or tender of the money operates as a defeasance of some collateral obligation. In such case, if a suit is brought on the collateral obligation, the money tendered cannot be recovered, because it is not part of the sum due by that contract; and, not being due by any other contract, the right to the money is forfeited and gone, by the refusal to accept it when tendered. *Trevett* v. *Aggas,* Willes 107; *Cotton* v. *Cliston,* Cro. El. 755; Bacon's Ab., Tender, F; Co. Lit. 207, a.

In such case it would seem that the party who refuses the money tendered loses it forever, as it is not due by any contract on which he can maintain an action to recover it, and the property in the money tendered does not pass by

the tender. *Trevett* v. *Aggas, qua supra ;* Bacon's Ab., Tender, F ; Co. Lit. 207, a.

Chipman, in his work on contracts, 94 and 95, says, after an examination of the authorities : " It is, then, perfectly clear that in the time of *Coke* the common law required that every plea of tender should contain an averment that the defendant is still ready to pay, or that the property is still ready, except in those cases only where the property was lost by tender and refusal';" and the general rule undoubtedly is that where a tender of money is made, it must be kept good, and the money brought into court when the tender is relied on in any legal proceedings, except in cases where the party to whom the tender is made loses the money by refusal to take it when tendered. In this case of an extent, if the creditor does not lose his money and all remedy for his debt, by refusing to take the amount when tendered, the general rule will apply, which requires the debtor, when he relies on the tender, to produce the money in court.

If we follow the literal language of the statute, the levy is to be *void* upon payment or tender of the appraised value of the land, and costs. It could not, however, have been intended that all the proceedings on the levy were to be wholly avoided by payment or tender, so as to revive the debt due by the judgment. On that construction the debtor, after having once paid the debt to the execution creditor, in discharge of the levy, would still be liable for the same debt on the judgment. The statute provides in express terms that the land shall be set off in satisfaction of the execution. The judgment, therefore, must be regarded as paid and satisfied, in whole or in part, as the case may be, by the levy, and the original cause of action is merged in the judgment. The creditor, then, after the levy, can maintain no action for the recovery of the debt, which was satisfied by the levy; nor has he any remedy by coming on the money tendered; for I find no authority

or practice which gives any countenance to the notion that property in money tendered, however it may be in respect to goods, passes by the tender, so as to give a remedy by action founded on a claim of property in the identical money tendered. If the creditor in a suit for the land cannot insist that money tendered, when the tender is relied on to defeat the levy, shall be brought into court, I do not see what remedy he has for his debt. There is certainly no subsisting contract on which he can maintain an action for the money; and in this respect the case is clearly distinguished from that of a mortgage, where, though the land may be discharged of the incumbrance, the debtor still remains liable on his contract to pay the debt.

When the amount of a judgment is paid by the debtor, after an extent on land, it must be regarded as the payment of a debt, and of a sum of money due from the judgment debtor to the judgment creditor. The money tendered must be considered as offered, not merely to save a forfeiture, but to pay the debt; and the rule which in such case requires the money tendered to be kept at all times ready for the creditor, is not peculiar to the common law, but is found in other codes, and is so much a dictate of natural justice that Chipman regards it as founded on natural law. Chipman on Contracts 78.

We cannot suppose it to have been the intention of the legislature that the judgment creditor, who, for any reason, might once decline to receive the money tendered, should forfeit his debt. The debt is not the less due. The moral obligation of the debtor to pay is certainly not diminished by his neglect to satisfy a just demand until the judgment has been extended on his land; and we are unable to discover any reason for supposing that the legislature intended to discharge the debtor, when they use the word *tender* in the statute, from the ordinary legal obligation of a debtor, who relies on the tender of money due,

to keep the tender good and produce the money in court, when he relies on the tender to discharge his land from an extent.

The case has a good deal of resemblance in substance to the payment or tender of money on a contract for the conveyance of land. The judgment has been satisfied by the levy; the title in the land has passed to the creditor, subject to the right of the debtor, under the statute, to pay the creditor the appraised value, within one year, and have the land back again, and on such payment or tender the statute provides that the creditor shall release his right to the land. In any proceeding to obtain a release under this provision of the statute, the debtor would stand in much the same situation as a purchaser, who had paid or tendered the liquidated price of land according to a written contract for a conveyance, and brought his bill for specific performance. In such case, if the complainant relied on a tender of the money agreed to be paid for the land, his bill would be required to offer payment of the money tendered; and so in the bill or other proceeding to obtain a release after tender of the appraised value of land set off on execution, I cannot doubt that the debtor would be required to show himself ready to pay the money tendered.

It is not easy to see how the debtor in this case would be more burdened or embarrassed by requiring him to produce the money tendered, than other debtors to whom the general rule is applied. He is not obliged to wait the movements of the judgment creditor; for if the creditor is in possession under the levy, the debtor may forthwith commence his action for the land, and bring the money tendered into court. In the present case it was not necessary for the debtor to delay, during his own life-time, and leave it for his heir to bring this suit. Instead of putting the money into the hands of a third person, there was nothing to hinder him from commencing his action immediately, and

bringing the money into court. And if the debtor should happen to be himself in possession of the land, he may proceed forthwith, under the statute, to call for a release.

Depositing the money tendered with a third person will not excuse the production of it, if otherwise necessary. The debtor being still bound, notwithstanding the tender, to pay the money due when demanded, could not transfer the obligation to another party. If the money were deposited in a bank of unquestionable credit, or were kept *in specie* by the debtor, and in either case lost by unforeseen accident, we are not now called upon to say whether the debtor might not, by showing that state of facts, excuse himself from producing the money. But the fact stated in this case, that the money was left in the hands of a third person for the creditor, can have no legal bearing on the present question. If the money is still kept in the hands of that person, the debtor may obtain it, and produce it in court ; if not, it is no fault of the creditor, who had no part in selecting the depositary. *Town* v. *Trow*, 24 Pick. 169.

We think it would be dangerous and against the general policy of the law, if a debtor were allowed to defeat a levy by proof of a mere offer to pay the appraised value of the land, without requiring him to bring the money into court. There would be no limitation of time for offering the evidence, and when verbal evidence is offered to defeat a title derived under a levy on land, we think the evidence should be accompanied by a profert of the money tendered.

On the whole, we are of the opinion that, under the statute, the mere act of offering to the creditor the amount at which the land has been set off on execution, will not, of itself, unconditionally avoid the levy and discharge the land from the incumbrance ; we think that the statute uses the word *tender* in the ordinary legal sense of that term ; and that a tender in this case, as in that of any

other debt, implies that if the money tendered is not accepted by the creditor at the time, it must be kept good by the debtor, and the amount produced by him in court, when he relies on the tender to avoid the levy.

*Verdict set aside.*